UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-003 (PJS/ECW)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING** |
| v. | ) ) | |
| SHANINTH MICHAEL RAY, | ) ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Lisa D. Kirkpatrick, Acting United States Attorney for the District of Minnesota, and Thomas Calhoun-Lopez, Assistant United States Attorney, hereby submits this memorandum setting forth its position with respect to sentencing factors in this matter.

The United States asks the Court to sentence Defendant Shaninth Michael Ray to a term of imprisonment of 71 months, an upward departure from his guidelines range. Ray possessed a firearm as part of an unrelenting campaign of domestic violence and cyberstalking.[1] Prior court orders and periods of incarceration have done nothing to prevent Ray from continuing to harass and terrorize KDT and others. Ray has assured KDT, her family, and

---

[1] Ray is separately charged with cyberstalking in victim KDT in the Northern District of Iowa. *United States v. Shaninth Michael Ray*, 24-CR-03015. The charge is currently pending.

police officers that he intends to hurt and kill KDT, and there is no reason to disbelieve him. A sentence of 71 months is reasonable and appropriate under the sentencing objectives of U.S. law.

## THE PRESENTENCE INVESTIGATION REPORT

### I. The Government's Position Regarding the Guidelines.

The United States agrees with the conclusions set forth in the Presentence Investigation Report (ECF No. 53 (PSR)) concerning Ray's guidelines calculations. Because Ray was prohibited at the time he committed the offense, the base offense level is 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A). (PSR ¶ 16.) Because Ray possessed the firearm in connection with stalking and cyberstalking, four levels are added pursuant to U.S.S.G. § 2K2.1(b)(6)(B). (PSR ¶ 17.) With credit for acceptance of responsibility, the total offense level is 15. (PSR ¶ 25.) Ray's criminal history category is VI. (PSR ¶ 50.) The guideline range is therefore 41–51 months' imprisonment. (PSR ¶ 96.)

### II. Ray's Objections to the PSR.

Ray makes six objections to the PSR. (PSR at A.1–A.4.) Each is discussed separately.

    a. *Identifying Data*. Ray objects that he has not used aliases listed in the PSR. (PSR at A.1.) The United States agrees with the PSR that sufficient information justifies inclusion of the information in the PSR. (*Id.* at A.1–A.2.) Because these aliases do not affect his guideline range, and from the

government's perspective do not affect any of the sentencing factors of 18 U.S.C. § 3553(a), the United States contends that the Court need not rule on this objection pursuant to Fed. R. Crim. P. 32(i)(3)(B).

  b. *Offense Conduct.* Ray objects to the underlying offense conduct contained in paragraphs 7–9, including the pattern of cyberstalking that informed the instant offense. (PSR A.2.) The United States opposes this objection. The United States intends to move for an evidentiary hearing to establish these facts at sentencing.

  c. *Offense Level Computation.* Ray likewise objects to the 4-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for cyberstalking. (PSR A.2.) As noted above, the United States intends to establish facts that support this adjustment at sentencing.

  d. *Criminal History.* Ray objects to 1) the assessment of three criminal history points for his convictions of Violations of Domestic Abuse No Contact Orders reflected in para. 36 of the PSR; 2) the assessment of three criminal history points for his conviction of Issuance of a Dishonored Check reflected in para. 37 of the PSR; and 3) the assessment of one criminal history point for his conviction of possession of a small amount of marijuana reflected in para. 40 of the PSR. (PSR A.3.) The United States opposes these objections in part.

  The United States agrees that the felony convictions of Violations of

Domestic Abuse and Issuance of a Dishonored Check were properly assessed a total of six points. In both convictions, Ray served sentences of imprisonment exceeding 13 months. (PSR ¶¶ 36–37.) In both, Ray was incarcerated within 15 years of the instant offense (*Id.*) The convictions were therefore properly assessed three points each pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(E)(1). Ray's argument that the convictions do not accurately reflect underlying facts is unavailing; he points to no authority under the guidelines through which they would not receive points.[2]

The United States does not oppose the removal of one criminal history point for Ray's prior petty misdemeanor conviction of Possession of a Small Amount of Marijuana pursuant to U.S.S.G. § 4A1.3, comment. (n.3(A)(ii)). This would result in a total number of criminal history points of 14, and Ray's criminal history category would remain VI.

    e.    *Offender Characteristics*. Ray objects to the inclusion in para. 70 of a civil petition he filed in U.S. District Court for the Northern District of Iowa claiming sovereign citizenship status. (PSR A.4.) The United States opposes this objection. The filing is a matter of public record. The Court "may consider, without limitation, any information concerning the background,

---

[2] To the contrary, the Eighth Circuit has held that a defendant cannot bring a collateral attack on an underlying state conviction in a federal prosecution. *United States v. Bena* 664 F.3d 1180, 1185 (8th Cir. 2011).

character, and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. Here, Ray's identification with an ideology that does not recognize public authority is consistent with his continued disregard of court orders (discussed further below). The information is therefore a relevant factor at sentencing.

f. *Factors that May Warrant a Sentence Outside the Guidelines Range.* As Ray notes, the parties view the nature and circumstances of the crime differently and will rely upon sentencing arguments on this point.

### III. The Government's Motion for an Upward Departure.

Pursuant to U.S.S.G. § 5K2.6, the United States respectfully moves for an upward departure in this case because of the nature of the Ray's crime and his use of a dangerous weapon. The United States moves for an upward departure to a sentence of 71 months.

The extent of an upward departure pursuant to this provision depends on "the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others." U.S.S.G. § 5K2.6.

As noted further below, Ray used his firearm as part of an unrelenting campaign of domestic violence and cyberstalking. He not only possessed a dangerous weapon, he used it to terrorize KDT and her family, coworkers, and friends. A significant departure is warranted under § 5K2.6 and a lengthy sentence is necessary under the sentencing objectives of 18 U.S.C. § 3553(a).

## ARGUMENT

### IV. The Appropriate Sentence in Light of 18 U.S.C. § 3553(a).

In addition to determining the Defendant's Sentencing Guideline range (18 U.S.C. § 3553(a)(4)), this Court is required to assess the other applicable sentencing factors under Section 3553(a) of federal sentencing law. Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Pursuant to these factors, the United States requests the Court sentence the defendant to a term of imprisonment of 71 months.

    a. *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Provide Just Punishment for the Offense.*

Ray used his firearm in the course of a vicious crime. Ray sent lurid, sadistic, and violent threats to KDT, promising to kill her and threatening her family, co-workers, and friends. A sampling of texts Ray sent, admitted as exhibits at Ray's detention hearing in the instant offense, follows.







Text message screenshot from "Ray OShea", 10:07, Government Exhibit 3, 23-mj-904 (JFD):

"...or drug her out the house far enough where that bitch in the middle of the street n I semi happened to go by and shred that bitch up or far enough where that train is and tie that bitch up n watch the train slice that bitch body in half n like I said to that pussy ass cop Steve since he captain sergeant of protect a hoe committee they don't scare me and he knows who the fuck I am he's not dumb cuz his pussy ass job was made to watch out for us gods google the shit but anyways I told that pussy they can't stay by that bitch 24/7 n as soon as they slide that bitch falling too .."

"Mfs ain't so tough even when a real nigga on board mfs wanna jump ship n drown well that bitch going to drown regardless"

"I'll pop up like Jesus"

"YOU WILL NEVER KNOW!!!!!"

"N I know you will never admit to your sister but the vibe n the way you touched my leg when you were drunk I knew you wanted to suck my dick n I should of let you but I knew you were drunk"





In the course of these texts, Ray threatens repeatedly to kill KDT, to "slice her throat" and "tear her insides out." (Gov't Ex. 2.) He threatens KDT's sister with a gruesome death and warns KDT that she "will never know" when he will come for her. (Gov't Ex. 3–4.) He sends KDT a video of the gun in the instant offense of conviction and threatens that he is close by. (Gov't Ex. 5.) He threatens to kill KDT's boyfriend before beating KDT to death in front of her son and putting KDT's severed head on her father's porch. (Gov't Ex. 6). Chillingly, Ray repeated assures KDT of the sincerity of this threats, texting "I WILL KILL YOU / I PROMISE" (Gov't Ex. 2) and "Bitch I'm killing you / I guarantee you that" (Gov't Ex. 6). Disturbingly, he repeatedly states that he is not afraid of police (Gov't Ex. 3–4) or even "spending the rest of his life in prison" (Gov't Ex. 2).

Ray's underlying crime appears calculated to put KDT in a state of perpetual, constant fear. It appears designed to deprive KDT of any feeling of comfort, safety, or security whatsoever. The fear that KDT and anyone she cared about must have endured in the face of these terrible threats is difficult to fathom.

A significant sentence is necessary to reflect the seriousness of these offenses, and to provide just punishment.

b. *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public.*

By the same token, a sentence of 71 months is necessary to deter Ray and to protect the public from his crimes.

As noted above, Ray's promises to visit terrible violence upon KDT and her loved ones appear genuine. It is for very good reason that law enforcement officers obtained authorization for an emergency 48-hour cell phone ping in August of 2023. (PSR ¶ 7.)

And his threats are consistent with his criminal history, which is replete with domestic violence. In 2008 he was convicted of fifth degree assault. (PSR ¶ 33.) In 2011 he was twice convicted of domestic assaults. (PSR ¶ 38–39.) In 2013 he was again convicted of fifth degree assault. (PSR ¶ 41.) In 2022 he was convicted of Assault Causing Bodily Injury or Mental Illness after he beat KDT—the victim in the instant offense. (PSR ¶ 47.) This criminal history shows a pattern of escalating violence, a terrible thought given the nature and circumstances of this instant offense of firearm possession.

Also troublingly, Ray appears to have open contempt for court authority. His criminal history is a litany of violations of no contact orders and domestic abuse orders of protection, stretching back to when Ray was 18 and continuing to 2022. (PSR ¶¶ 30–32,36, 42, 47–48.)

Ray appears either unwilling or unable to cease his physical and

13

psychological attacks upon his victims. He appears to be on a steady and inexorable path toward shocking and irretrievable acts of violence. A significant sentence is necessary to deter Ray and protect the public from him.

## CONCLUSION

In light of all the facts of the facts in this case, and pursuant to the sentencing objectives of 18 U.S.C. § 3553(a), the United States asks this Court to sentence Shaninth Michael Ray to a term of imprisonment of 71 months.

Date: February 27, 2025

Respectfully Submitted,

LISA D. KIRKPATRICK
Acting United States Attorney


*s/ Thomas Calhoun-Lopez*

BY: THOMAS CALHOUN-LOPEZ
Assistant U.S. Attorney
Attorney ID No. 480908DC